THENA MEHAFFY, Appellee, v. ROSCOE FARMERS SAVINGS BANK, Appellant.

No. 40044.

APRIL 14, 1930.

*Seerley & Clark* and *John Hale,* for appellant.

*Wilson & Jackson,* for appellee.

DE GRAFF, J.—The Roscoe Farmers Savings Bank (appellant) was engaged at Roscoe, Iowa, in the banking business, at all times material to the issues here involved. C. H. Barton was the president of said bank, and Nellie Peck was cashier. The plaintiff-appellee, Mrs. W. W. Mehaffy, had some money which she desired to invest. In 1925, she intrusted to Mr. Barton $2,000, for the purpose of investment. He did invest same, by withdrawing a note then owned by and in the possession of the defendant bank. He kept the note, at the request of appellee, in the vault of said bank.

In 1927, a new note was substituted for the original $2,000 note, and it was subsequently paid. With this first transaction we are not concerned upon this trial, except as a matter of history. It appears, however, that, prior to the payment to the appellee of the $2,000 instrument, a conversation was had between Barton and Mrs. Mehaffy, relative to some other money which she desired Barton to invest for her. This had reference to the $550 involved in the instant case. Pursuant to said conversation, Mrs. Mehaffy, on March 15, 1926, executed her check (prepared by Barton) on the Citizens' State Bank of Mediapolis, Iowa, for $550, payable to the Roscoe Farmers Savings Bank. This check was indorsed by said payee bank, by "C. H. Barton, Vice-president." Clearly, the bank received the proceeds. This money was invested through C. H. Barton, but the record fails to disclose the character of the security taken therefor in the first instance. The record does show, however, that a note owned by the defendant bank in the sum of $550, dated August 3, 1926, payable March 1, 1927, to the order of the Roscoe Farmers Savings Bank, and signed by one Perry Despain, was placed to the credit of Mrs. Mehaffy. Said note was indorsed by the bank, to wit: "Pay to the order of Mrs. W. W. Mehaffy without recourse." This note was likewise kept in the vault of the bank,

as per original instruction given by appellee to Mr. Barton, the acting officer and manager of the defendant bank. It is further shown that, while said note was in the possession of said bank, there was indorsed thereon: "Int. for 1 yr. $33. pd." Mrs. Mehaffy testified that she received a check for said interest. The said check was not in evidence in this case, and consequently it is not shown by the best evidence who was the drawer of the check.

It is further shown that, in October, 1927, Mrs. Mehaffy went to the bank, to make inquiry concerning her two loans. The cashier (Miss Peck) produced the two notes, one for $2,000, and the other for $550. While Mrs. Mehaffy was looking at said notes, Barton made his appearance, and took the notes out of her hands, and said:

"That man [meaning Despain, maker of the $550 note] is all right, he is as good as gold; you will get your money."

Mrs. Mehaffy, not being entirely satisfied, returned to the bank a little later, and again requested Miss Peck to show her the notes. At that time, Mrs. Mehaffy noticed the indorsement on the Despain note, and said to Miss Peck: "That note is no good, is it?" The cashier replied: "I don't think it is very much." At this time, Mrs. Mehaffy observed that a new $2,000 note, signed by C. H. Barton, had been substituted for the Fye note for $2,000. In the early part of March, 1928, Mrs. Mehaffy went again to the bank, and the $2,000 was paid, and she was given possession of the $550 note.

It further appears that the Roscoe Bank received from Despain, about March 1, 1927, personal property, approximately $5,000 in value, to pay the notes which Despain owed the bank, which necessarily included the $550 note executed by Despain to the bank on August 3, 1926. This note was then in the vault of the Roscoe Bank, although indorsed by said bank to the appellee, Mrs. Mehaffy.

The primary fact question may be stated as follows: With whom was the plaintiff (appellee) doing business at the time in question, the defendant Roscoe Farmers Savings Bank, or C. H. Barton, as an individual? The appellant bank contends that the negotiations and the transaction in question were personal deal-

ings with C. H. Barton, and denies liability on the part of the bank to the appellee herein.

Turning to the answer, we find first a general denial, and in a second paragraph or division, the allegation that, on or about the first day of March, 1926, the defendant bank sold to the plaintiff, in the ordinary course of business, the note of one Perry Despain, dated August 3, 1926, payable March 1, 1927, and also reciting the indorsement on the back of said note. It admits that Nellie Peck, cashier of the bank, was authorized "to make that indorsement," and further alleges that the purchase of said note was with the full knowledge and approval of the plaintiff herein.

Certain questions naturally arise on this appeal. If the transaction involved was purely a personal transaction between plaintiff and Barton, why was the check which evidenced the investment of $550 made direct to the Roscoe Bank? Why was the check prepared by Barton in the form it was prepared, before the appellee attached her signature thereto? Whose note was turned over to the appellee, and placed in the keeping of the bank? It is observed that the note was owned by the bank, and there is no explanation that Barton ever purchased said note from his bank. He was the president of said bank, and was the monarch of all he surveyed therein; and the only inference that can be drawn is that the note in question was taken by him as president, to serve the purpose of the transaction in question. Who paid the interest on the Despain note? Who made the indorsement of the interest paid on said note? Why did the bank have possession of these notes, if the bank was not the agent of the appellee? True, Mrs. Mehaffy requested that Barton keep possession of the note in his bank, as a "safety first" proposition; but this does not prove that the transaction was personal with Barton. Why did the appellant bank plead the defense it did plead in its answer, if the facts pleaded were not true? There can be no quarrel on the legal propositions governing this case, when the facts are determined. We are not unmindful of the rule that an officer of a bank may act in an individual or private capacity, and the burden is upon the plaintiff, to prove by a preponderance, that the bank did act for plaintiff in the transaction. *Pease v. Citizens State Bank,* 204 Iowa 70. Under the instant facts, we cannot escape the conclusion that the bank was the

agent of the plaintiff. The bank, therefore, could not secure an undue advantage from the contract in question. Special trust and confidence were reposed by the plaintiff, and the bank could not with impunity abuse that trust and confidence to its own profit.

The facts here disclose that Despain, the maker of the note in question, ended his business career in January, 1927, and on March 1, 1927, turned over to the bank all his personal property, for disposition by the bank as it saw fit. These facts were not communicated by the bank to Mrs. Mehaffy. The bank then had the money for the payment of the note in question, and had the note in its possession, and in a fiduciary capacity. The bank offeréd no explanation why it did not pay the note of Despain (then overdue and unpaid) which it had indorsed or assigned to the appellee. True, the agent was not an insurer, nor is there any claim that any bad faith is involved in the original investment; but it is true that the bank, as appellee's agent, received property from the maker of the notes to the bank, including the note in suit, for the purpose of paying the indebtedness owed by the maker to the bank for money loaned him by the bank.

We conclude, as did the trial court, that the bank was derelict in its duty and its obligations as a fiduciary to the appellee.—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.